SUMMARY ORDER
The named plaintiffs (“plaintiffs”) appeal from a September 20, 2007 judgment of the District Court, granting defendants’ motion to dismiss with prejudice. We assume the parties’ familiarity with the factual and procedural history of the case, though we revisit key portions of that history here.
In April 2006, plaintiffs brought the consolidated putative class action against American International Group, Inc. (“AIG”) and certain of its broker-dealer subsidiaries (“the AIG Brokers”). Plaintiffs alleged that they all purchased shares or like interests in certain mutual funds, referred to as “Shelf-Space Funds,” from the AIG Brokers. Plaintiffs alleged also that “[djefendants failed to properly disclose that they had been aggressively pushing the AIG financial advisors to sell the Shelf-Space Funds that provided undisclosed payments, financial incentives *497 and rewards to AIG or its affiliates in exchange for kickbacks.” J.A. at 46. The complaint asserted several claims of securities fraud, including claims under § 10(b), 15 U.S.C. § 78j(b), and § 20(a), 15 U.S.C. § 78t(a) of the Securities Exchange Act of 1934, which remain the claims at issue here.[1]
Following oral argument, the District Court granted defendants’ motions to dismiss the action in an April 25, 2007 Memorandum and Order. See In re AIG Advisor Group Sec. Litig., No. 06-cv-1625 (JG), 2007 WL 1213395 (E.D.N.Y. Apr. 25, 2007). Specifically, the District Court dismissed plaintiffs’ complaint pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(h)(3) for lack of subject matter jurisdiction, insofar as the complaint related to funds other than the ones in which plaintiffs alleged they owned shares. The District Court also granted defendants’ motion for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted with respect to certain claims that it found were time-barred by the relevant statute of limitations, but denied the motion in all other respects. Finally, the District Court dismissed plaintiffs’ complaint pursuant to Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(l), (“PSLRA”), for failure to adequately plead fraud by the AIG Brokers because of a want of sufficient particularity.
On May 31, 2007, plaintiffs filed an amended complaint designed to cure the pleading deficiency identified by the District Court in its ruling of April 25, 2007. Defendants filed a motion to dismiss the amended complaint on June 22, 2007. Following oral argument, the District Court granted defendants’ motion to dismiss in a September 20, 2007 Memorandum and Order. See In re AIG Advisor Group Sec. Litig., No. 06-cv-1625 (JG), 2007 WL 2750676 (E.D.N.Y. Sept. 20, 2007). Specifically, the District Court concluded that most of the complaint’s description of what the AIG Brokers stood to gain from selling the Shelf-Space Funds was still “too generalized.” Id. at *1. To the extent that the plaintiffs had included specific sums that the AIG Brokers would gain by each transaction with the plaintiffs, including $25 for a “standard” $10,000 transaction, the District Court determined that those sums were “too small to state a claim upon which relief can be granted.”[2] Id. Based upon these two flaws of the complaint, the District Court concluded that “an inference of bias cannot properly be drawn from the plaintiffs’ allegations,” and dismissed the complaint. Id. at *5. Plaintiffs filed a timely notice of appeal.
We review de novo the dismissal of a complaint under Rules 12(b)(1) and 12(b)(6). See Jaghory v. N.Y. State Dep’t of Educ., 131 F.3d 326, 329 (2d Cir.1997). We “must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff.” Id. However, “[securities fraud claims are subject to heightened pleading requirements that [a] plaintiff must meet to survive a motion to dismiss.” ATSI Commc’ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir.2007). Specifically, under Rule 9(b) and the PSLRA, a plaintiff “must state with particularity the circumstances constituting fraud.” Fed.R.Civ.P. 9(b).
*498 We conclude, albeit for different reasons than those stated by the District Court, that plaintiffs’ claims were properly dismissed.[3] See Ferran v. Town of Nassau, 471 F.3d 363, 365 (2d Cir.2006) (“[W]e may affirm on any basis for which there is sufficient support in the record, including grounds not relied on by the District Court....”). In their complaint, plaintiffs incorporated by reference website disclosures made by the AIG Brokers that detailed the allegedly undisclosed shelf-space arrangements. At oral argument, plaintiffs were unable to dispute that these website disclosures, assuming their adequacy, would foreclose their claims — either because the timing of the disclosures, with a single exception, would have triggered the applicable statute of limitations, or because their content rendered inactionable the alleged misrepresentations or omissions.[4] See 28 U.S.C. § 1658(b)(1) (establishing two-year statute of limitations for claims filed after the enactment of the Sarbanes-Oxley Act); Shah v. Meeker, 435 F.3d 244, 249 (2d Cir.2006) (explaining that “limitations period begins to run when the plaintiff obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge” (internal quotation marks omitted)); see also id. at 252 (holding that plaintiff on inquiry notice could not succeed with a separate fraud claim for purchases made after the notice date). Instead, plaintiffs claimed that the website disclosures were themselves misleading because, while they disclosed the existence of “shelf space” payments made by the mutual funds’ distributor and/or investment advisor, they failed to disclose that those payments were ultimately borne by fund shareholders. Plaintiffs’ complaint, however, draws no such distinction about the payment source: It alleges that the AIG Brokers had an undisclosed conflict of interest based on their receipt of “secret payments” or “undisclosed kickbacks.” Amended Cplt. H H 38, 50. The websites therefore disclosed the existence of the very “conflict of interest” at the heart of plaintiffs’ complaint, barring any claim based thereon. See Shah, 435 F.3d at 251 (analyzing impact of conflict-of-interest disclosure that went to “the heart of [plaintiffs] complaint”).

CONCLUSION

For the reasons stated above, the judgment of the District Court is AFFIRMED.

. Plaintiffs originally brought additional claims pursuant to the Securities Act of 1933, which they omitted in their amended complaint of May 31, 2007 — the operative pleading at issue here.

. The District Court noted that the "standard” $10,000 transaction figure is supplied by the plaintiffs' brief — rather than the complaint. In re AIG Advisor Group Sec. Litig., 2007 WL 2750676, at *4 n. 5.

. Because we affirm on these grounds, we express no view on the District Court’s materiality and standing rulings.

. The single exception is the website of Sun-America Securities, Inc. ("SunAmerica"), which may have posted its disclosure as late as April 13, 2004 — approximately one week shy of two years before plaintiffs filed their complaint. Even assuming that the timing of the disclosure were resolved in plaintiffs' favor, the complaint would still fail to state a claim. That is because, given the unique circumstances of the roughly contemporaneous posting of nearly identical website disclosures by the other AIG Brokers, combined with preexisting disclosures contained in the Shelf-Space Funds' prospectuses and accompanying SAIs, sufficient knowledge existed to place plaintiffs on inquiry notice of SunAmerica’s alleged fraud at least as of April 6, 2004. See Shah v. Meeker, 435 F.3d 244, 249, 252 (2d Cir.2006).